IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GABRIEL JOSEPH,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | MEMORANDUM DECISION AND ORDER WAIVING ATTORNEY-CLIENT PRIVILEGE<br><br>Case No. 2:19-cv-00140-JNP<br><br>District Judge Jill N. Parrish |

Gabriel Joseph filed a petition to vacate the criminal judgment entered against him. Before the court is the Government's motion for an order waiving Joseph's attorney-client privilege to the extent that the arguments in his petition rely upon communications with his attorneys. [Docket 4]. The court GRANTS the Government's motion.

Joseph was convicted of two counts of wire fraud, one count of money laundering, one count of making a false statement to a bank, and one count of willfully failing to file a tax return. He filed the current petition to vacate his conviction, arguing that his trial counsel, Richard Mauro, was ineffective. Joseph asserts that Mauro was ineffective for a number of reasons. One of the arguments that Joseph makes is that Mauro was ineffective because he failed to properly investigate and assert an advice of legal counsel defense. He contends that attorney Douglas Matsumori advised him that the transactions that formed the basis of his conviction were legal. Joseph also asserts that attorney Joseph Thibodeau advised him not to file a tax return.

The Government moved for an order confirming a limited waiver of Joseph's attorney-client privilege in relation to his communications with Mauro, Matsumori, and

Thibodeau. Joseph concedes that he has waived his attorney-client privilege for his communications with Mauro. But he argues that he has not waived his attorney-client privilege for his communications with Matsumori and Thibodeau. Joseph contends that because he has provided verified statements in his petition as to what Matsumori and Thibodeau told him, there is no need to interview these attorneys. Joseph further argues that if the court deems that he waived his privilege, the Government should only be able to ask Matsumori and Thibodeau generally whether they provided legal advice regarding the structure of real estate transactions and tax issues. Joseph argues that the Government should not be allowed to ask these attorneys about the specific advice they gave to Joseph.

"When a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications." *United States v. Pinson*, 584 F.3d 972, 977–78 (10th Cir. 2009). Thus, it is black letter law that a petitioner waives the attorney-client privilege for communications with the defense attorney who allegedly provided ineffective assistance. *Id.* The question before the court is whether a habeas petitioner also waives this privilege in relation to attorney communications that would support an advice of legal counsel defense when the petitioner argues that his trial attorney was ineffective for not pursuing this defense. The court answers in the affirmative.

In order to prevail on his ineffective assistance of counsel argument, Joseph must show that his trial counsel's performance was deficient and "that the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, Joseph has the burden of proving "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, Joseph must show

that if his trial attorney had asserted an advice of counsel defense and presented evidence of statements made by Matsumori and Thibodeau at trial, there is a reasonable probability that the jury would not have found him guilty on at least one of the five counts for which he was convicted.

The persuasiveness of the unasserted advice of counsel defense rests upon the evidence that both Joseph and the Government could have presented at trial regarding the advice that Matsumori and Thibodeau gave to Joseph. Thus, Joseph placed his communications with Matsumori and Thibodeau at issue by arguing that his trial counsel neglected to present a valid advice of counsel defense. He therefore waived his attorney-client privilege for these communications *See Pinson*, 584 F.3d at 978 ("[W]e hold that when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim.").

Permitting Joseph to argue that his conviction should be vacated because his trial attorney ignored a persuasive advice of counsel defense, while also allowing him to assert the attorney-client privilege to prevent the Government from challenging the viability of this defense, "would violate the well-established principle that 'attorney-client communications cannot be used both as a sword and a shield.'" *Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1277–78 (10th Cir. 2014) (holding that a civil litigant may not assert an advice of counsel defense "while excluding the contents of that advice"). The court therefore rules that Joseph has waived his attorney-client privilege as to communications with Mauro, Matsumori, and Thibodeau to the extent that these communications are relevant to the arguments made in his petition. Accordingly, the court GRANTS the Government's motion for entry of an order waiving the attorney client privilege. [Docket 4].

**IT IS THEREFORE ORDERED** that to maintain his attorney-client privilege with Mauro, Matsumori, and Thibodeau, defendant Joseph shall, within 14 days of the date of this Order, file a notice withdrawing his § 2255 petition.

**IT IS FURTHER ORDERED** that if defendant Joseph fails to withdraw his § 2255 petition within 14 days, the attorney-client privilege is deemed waived as to all communications between Joseph and Mauro, Matsumori, and Thibodeau that relate to the ineffective assistance claims raised in his 2255 petition. Specifically, the court orders that Joseph shall waive attorney-client privilege with Mauro, Matsumori, and Thibodeau as to any and all communications (both oral and written), as well as work product, impressions, opinions, thoughts, concerns, perceptions, ideas, decisions, strategy development, inquiries, and investigations regarding the following:

- Petitioner's communications "to his trial counsel that he needed to interview other possible defense witnesses, including
    - Russell C. Skousen (regarding, *inter alia*, reliance on counsel, good faith regarding the structuring of the real estate transaction);
    - Claud R. Koerber (regarding, *inter alia*, evidence related to accuracy and good faith of loan applications, relationship with Founders Capital and promissory notes, good faith related to structure of real estate transactions and equity milling, and reliance on written legal opinions from law firms and attorneys);
    - Katie Adams (regarding testimony of government witness Brandon Adams, and Mr. Joseph's prior agreements with Mr. Adams for structuring related LLCs, the real estate purchases at issue in this matter, and the commitment to seeking, obtaining and following legal advice at each step);
    - Other possible witnesses, to enable Joseph to put on a full defense, including a factual innocence defense related to his truthful and good faith statements of income, assets, etc." Petitioner's 2255 Motion at 5-6

- Whether Petitioner Joseph should testify. *Id.* at 6

- The defense strategy to "blame the bank and … blame Shannon Spangler". *Id.* at 6.

- "[A]ctual legitimate defenses and evidence that Mr. Joseph had discussed and preferred in repeated conversations with each of his attorneys." *Id.* at 6.

4

- Whether Shannon Spangler was interviewed, subpoenaed, or her records subpoenaed or requested. *Id*. at 8.

- Whether Shannon Spangler "acted fraudulently with respect to Mr. Joseph's loan." *Id*. at 8.

- Decision not to pursue "straight forward innocence defense that no fraud was committed." *Id*. at 8.

- "Witnesses and evidence Joseph had previously identified and that Joseph had requested each of his attorneys interview." *Id*. at 8.

- Decision to call Cara Milgate, Paul Rademaker, and Glenn Traylor. *Id*. at 8.

- "[E]vidence of Ms. Spangler's prior unethical and/or fraudulent conduct." *Id*. at 9.

- Witnesses "to confirm where Shannon Spangler worked and what here telephone number was." *Id*. at 9.

- "[L]ack of pretrial interviews, lack of pretrial subpoenas." *Id*. at 9.

- "[M]aking … significant change in defense strategy right before trial started." *Id*. at 9.

- Any legal strategy that "Mr. Joseph had communicated [to] all of his attorneys pretrial." *Id*. at 10.

- "[C]ounsel was unexplainably dismissive of Mrs. Adams." *Id*. at 10.

- "Ms. Adams could offer essential testimony to impeach and clarify Mr. Adams testimony." *Id*. at 10.

- Whether Mr. Joseph "urged his legal counsel to call [Katie Adams] to testify about 1) Mr. Adam's drug use being the reason he couldn't remember any detail about the transactions at issue and 2) Mr. Adams and Mr. Joseph's original conversations about how to structure the subject real estate transaction as partners (he owned SCIPC, LLC which sold the cabin to Joseph), and specific conversations about ensuring the transaction was legal." *Id*. at 11.

- Decision not to call Katie Adams. *Id*. at 11.

- Efforts to prepare for trial and investigate defenses. *Id*. at 11.

- "[K]ey facts and key witnesses" described by Mr. Joseph to counsel. *Id*. at 11.

- Development of "tenable theory of defense." *Id*. at 11.

5

- To what extent Mr. Joseph "sought and obtained advice of counsel and was specifically advised that the general structure of the transactions, as well as the specific real estate transaction itself, was not illegal." *Id*. at 12.

- Good-faith reliance on counsel defense. *Id*. at 12.

- Potential trial testimony, interviews, and investigations of attorneys Douglas Matsumori and Russell C. Skousen. *Id*. at 12.

- Potential testimony of "Mr. Joseph's business partners (including Lindsey Dayton, Steve Freestone, Claud R. Koerber, Clavell Anderson, and Sonny Jensen) [establishing] that Mr. Joseph also sought and received legal advice on how to structure the real estate transaction at issue, and that the advice he and several of his business associates received was that the structure and manner and method he used in carrying out the transactions at issue here, were legitimate and legal." *Id*. at 12-13.

- "[L]egal advice from Russell Skousen and attorneys at Ray Quinney & Nebeker, including attorney Douglas Matsumori." *Id*. at 13.

- "Discussions of the legality of the general structure of loan transactions like the one for which Mr. Joseph was convicted, and even the legality of the specific loan transaction for which Mr. Joseph was convicted." *Id*. at 13.

- "Mr. Joseph had sought and received advice of counsel that the equity milling model was legal, and he even sought and received advice of counsel that the specific loan transaction for which he was convicted was legal." *Id*. at 14.

- "David Ingles (testimony - as trial counsel knew, having been told by Joseph multiple times, will confirm that Mr. Joseph never communicated with the appraiser about value of the property, the loan amounts, etc., also will confirm that Joseph acted in good faith regarding disclosures as to owner-occupied versus non-owner occupied status of loan application)." *Id*. at 14.

- "Joseph Thibodeau (no interview) (tax attorney whose testimony – as trial counsel knew, having been told by Joseph multiple times, will confirm Joseph's good faith in not filing a return, in attempting to secure accurate returns, and advice given to Gabe not to pay the IRS until his work was completed)." *Id*. at 14.

- "[T]rial counsel failed to investigate there was available and credible evidence that Mr. Joseph never actually made a false statement or material omission to the bank." *Id*. at 16.

- "Mr. Joseph's trial counsel failed to investigate and retain one or more expert witnesses." *Id*. at 16.

- "[T]rial counsel failed to present evidence that Mr. Joseph made substantial payments on the underlying loan for approximately one and a half years." *Id*. at 18.

- "Trial counsel failed to adequately investigate or present any evidence whatsoever related to the tax count for which Mr. Joseph was convicted." *Id*. at 19.

- "[E]vidence could have been presented to the jury that a) Joseph was attempting to pay his taxes, and had hired a company to prepare accurate returns, b) the company was paid but did not finish the job, and ultimately Joseph was exhausted of resources to receive other professional help to complete the task." *Id*. at 20.

- "Joseph also paid a $75,000 retainer to a tax attorney to try and work with the IRS in rectifying the situation, and that tax attorney advised Joseph: 'don't do anything. Don't file. Don't contact the IRS. I'll handle everything.'" *Id*. at 20.

- "[W]hen Joseph was charged with willful failure to file, this same attorney demanded an additional $100,000 before he would provide Joseph with complete returns and later withdrew from his representation when Joseph couldn't pay." *Id*. at 20.

- "Trial counsel failed to investigate this matter, failed to interview or subpoena documents from the tax attorney or tax company involved, and failed to present any of this evidence to the jury." *Id*. at 20.

- "Trial counsel did not adequately object to the admissibility of Mr. Garlick's testimony. One reason is that trial counsel had not interviewed Mr. Garlick or otherwise investigated his anticipated testimony." *Id*. at 21.

- "[T]he Government made statements about Mr. Garlick's testimony that were patently false and 'fabricated from whole cloth.' In the context of a fraud trial, the Government's misstatements were egregious, and trial counsel's failure to object was constitutionally deficient." *Id*. at 22.

- "[T]he Court invited trial counsel on at least three (3) different occasions to submit a limiting jury instruction. Trial counsel never did. This failure allowed Mr. Garlick's testimony to impermissibly influence the jury to Mr. Joseph's prejudice." *Id*. at 23.

- "Mr. Joseph was clearly entitled to a 'duty to disclose' instruction, and trial counsel's failure to even request such an instruction was constitutionally deficient. Simply stated, 'counsel's failure to request the appropriate instructions was not a strategic choice, but the result of his failure to understand the applicable law.'" *Id*. at 25.

- "Mr. Joseph's counsel did not file a reply brief addressing the weighing of Speedy Trial Act factors or addressing culpability for Speedy Trial Act delay (meaning delay that caused the

violation as opposed to mere calendar delay) and did not address prosecutor or court factored neglect of the Speedy Trial Act clock, any pattern of neglect, or the impact of reprosecution factors." *Id*. at 25-26.

- "[T]he Speedy Trial Act was violated for a second time without Mr. Joseph's counsel taking any action or advising him (or the court) of the same." *Id*. at 27.

On these subjects, Mauro, Matsumori, and Thibodeau may specifically submit to interviews with the United States, provide affidavits, provide related documentation and communications, and if necessary, testify before the court.

Signed May 9, 2019.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge