IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GABRIEL SETH JOSEPH, <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | **MEMORANDUM DECISION AND ORDER DENYING § 2255 MOTION TO VACATE JUDGMENT AND SENTENCE** <br><br> Case No. 2:19-cv-00140-JNP <br><br> District Judge Jill N. Parrish |

Before the court is a Motion to Vacate Judgment and Sentence pursuant to 28 U.S.C. § 2255 filed by Petitioner Gabriel Seth Joseph ("Joseph" or "Petitioner"). ECF No. 1 ("Mot."). Respondent United States of America ("Respondent") filed an opposition to Petitioner's motion. ECF No. 24 ("Resp."). For the reasons set forth herein, Petitioner's motion is **DENIED**.

## BACKGROUND

Following a jury trial in November 2015, Joseph was convicted on two counts of wire fraud, one count of money laundering, one count of making a false statement to a bank, and one count of willfully failing to file a tax return. On June 16, 2016, the court sentenced Joseph to 78 months incarceration and ordered him to pay restitution and forfeiture. Joseph appealed his conviction, and the Tenth Circuit affirmed the judgment of the court on September 1, 2017. Joseph subsequently filed this § 2255 motion.

Joseph moves to vacate his conviction and sentence on the grounds that he was deprived of his Sixth Amendment right to effective assistance of counsel. Joseph also makes a claim under the Fifth Amendment Due Process Clause but fails to advance any argument other than ineffective assistance of counsel. The court therefore addresses only Joseph's Sixth Amendment claim.

**LEGAL STANDARD**

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984). "An insufficient showing on either element is fatal to an ineffective-assistance claim," *Smith v. Duckworth*, 824 F.3d 1233, 1249 (10th Cir. 2016).

To satisfy the first prong, a petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. This is a challenging standard for a petitioner to satisfy, since "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Indeed, there is a strong presumption that "counsel . . . rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Hooks v. Workman*, 689 F.3d 715, 723 (10th Cir. 2010) (internal quotation marks omitted). Thus, "[t]o be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." *Id.* (internal quotation marks omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

To satisfy the second prong, a petitioner must show that counsel's deficient performance "actually had an adverse effect on the defense." *Id.* at 693. That is, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

2

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## ANALYSIS

As an initial matter, Joseph requests an evidentiary hearing on his ineffective assistance claim. "2255 provides for an evidentiary hearing unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also United Staes v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988). Having proceeded over the trial and arguments of counsel and after reviewing the record, the court finds that the case conclusively shows that Joseph is entitled to no relief. Therefore, the court denies Joseph's request for an evidentiary hearing.

In his motion, Joseph argues that he was denied effective assistance of counsel because his counsel provided incompetent legal advice on trial defense, failed to investigate and present other meritorious defenses, failed to object to or offer certain evidence at trial, failed to object to or request certain jury instructions, and failed to advocate for Joseph's speedy trial rights. The court addresses each argument below.

**I.**     **Incompetent Trial Defense and Failure to Investigate or Present Other Defenses**

Joseph argues that his counsel provided incompetent trial advice and failed to investigate other meritorious defenses. Specifically, he argues that his counsel (1) advised him not to testify, (2) adopted an incompetent trial strategy of blaming the bank and blaming the mortgage broker, Shannon Spangler, (3) failed to adequately investigate an advice of counsel defense, and (4) failed to adequately investigate that Joseph made good-faith representations regarding his income, assets and owner occupancy status. The court finds that none of these grounds overcomes the strong

3

presumption that trial counsel's advice and strategic decisions fall within the wide range of reasonable professional assistance.

First, trial counsel's advice not to testify was reasonable. Counsel informed Joseph several times of his right to testify and nothing in the record suggests counsel coerced or forced Joseph into not testifying. Further, if Joseph had testified, he would have faced impeachment on fraudulent transactions that were dismissed from the indictment. As the Tenth Circuit recently noted, "no judge could legitimately question the reasonableness of the attorney's advice against testifying," and the court does not do so here. *Oropeza v. Martinez*, 2025 U.S. App. LEXIS 4675, at *9 (10th Cir. 2025).

Second, Joseph argues that his counsel adopted an incompetent trial strategy regarding his defense. Joseph characterizes his defense strategy as only two-fold, (1) blame the bank and (2) blame Shannon Spangler. But the defense presented by Joseph's trial counsel was much more robust. Trial counsel made several arguments to create reasonable doubt in the minds of the jurors. He vigorously attacked the credibility of the investigation and government witnesses, he presented evidence that Joseph had been honest and fair in his dealings with the bank, and he called into question the fairness of the prosecution. Further, counsel's approach to blame the bank and Shannon Spangler was a reasonable strategy. Counsel's attack on the bank's lending practices sought to disprove the materiality element of the crime, a legitimate defense. And counsel's attack on Spangler sought to create reasonable doubt that Joseph was responsible for the fraud. Although Joseph appeared at closing and signed the documents, by showing fraud on behalf of Spangler, trial counsel could argue that Joseph had no fraudulent intent.

Joseph also argues that his counsel failed to investigate or call Katie Adams as a witness. But defense counsel decided not to call Adams because she would have only offered testimony of her husband's alcoholism, something that her husband had already admitted to on the stand. In fact, counsel believed she would be more harmful than helpful to Joseph as she would have likely testified that he never lived in the house in question, which would be damaging to his defense. Thus, defense counsel made a reasonable decision in not calling Adams to testify as she would have presented either redundant or harmful testimony.

Joseph next argues that his counsel failed to adequately investigate an advice of counsel defense or a "factual innocence" defense. Joseph alleges that billing records from the law firm of Ray, Quinney, and Nebeker ("RQN") as well as Joseph's testimony would establish that he sought legal advice about how to structure his loan. He further alleges that the lawyers at RQN advised him that the way in which he structured his loan was legitimate and legal. He also contends that his tax attorney, Joseph Thibodeau, advised him not to file taxes. But the government's evidence shows that any advice sought by these lawyers was obtained after the transaction occurred. *See* ECF Nos. 24-1 ("Matsumori Interview"), 24-4 ("RQN Retention Agreement"); 24-7 ("Thibodeau Interview"), 24-8 ("Wire Transfer to Thibodeau") (establishing that any legal advice or retention payment occurred after the criminal transaction). Further, the lawyer Joseph retained at RQN, Douglas Matsumori, testified in an interview with the government that *any* advice he gave to Joseph was retroactive. Thus, the advice of counsel defense would not have been successful. And it was neither unreasonable nor prejudicial to Joseph for trial counsel not to pursue it.

Finally, Joseph argues that trial counsel failed to pursue a "factual innocence" defense. But the only witness that could have established this defense would have been Joseph, and trial counsel

5

had good reason to advise Joseph not to testify. Thus, it was reasonable for trial counsel not to pursue either of those defenses. Petitioner has not established that trial counsel's strategic choices in determining what defenses to pursue and which witnesses to call were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

## II.     Failure to Object to or Offer Evidence

Next, Joseph argues that his trial counsel failed to object to or offer certain evidence at trial. Specifically, he argues that his counsel was ineffective because defense counsel (1) failed to hire an expert to testify about the accounting records, (2) failed to investigate and challenge the tax charge, (3) failed to object to Jay Garlick's testimony, and (4) failed to object to the United States' closing argument referencing Garlick's testimony.

First, Joseph argues that defense counsel failed to investigate expert testimony to present at trial. This is not true. Joseph's counsel attempted to hire an expert but was unsuccessful at finding any expert who would be helpful to Joseph's defense. Further, Joseph has not demonstrated that hiring an expert would have changed the outcome of this trial. He points to evidence of additional underlying loan payments that the expert could have testified about. But Joseph does not explain how these additional payments, beyond the payments that were presented at trial, would have changed the outcome. Joseph also points to the accounting methods presented at trial that were used to determine whether funds were comingled with other sources. But, again, he fails to explain how testimony using different accounting methods would have changed the outcome of his trial. Instead, he summarily concludes, "[t]he point is, that without a financial expert, pre-trial (to assist in making strategic decisions) and for testimony at trial, the failure was not merely strategic – it was constitutionally defective and prejudicial." Mot. at 19. But he does not present argument as to

*how* the expert would have prevented prejudice to Joseph. Thus, Joseph has not met his burden of showing that defense counsel's failure to hire an expert was unreasonable or prejudicial to him.

Second, Joseph argues that his counsel failed to fully investigate the tax charge. Here, trial counsel pursued a theory that Joseph did not have willful intent to fail to pay his taxes. Specifically, trial counsel argued that Joseph's failure to file was non-willful because had paid a large sum of money and made extraordinary efforts to put together his tax documents. Again, this theory is well within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Third, Joseph argues that his defense counsel failed to object to Jay Garlick's testimony. But this argument contradicts the record. Defense counsel *did* object to Garlick's testimony as irrelevant and inadmissible character evidence. The court overruled that objection. Thus, Joseph's statement that defense counsel failed to object to Garlick's testimony is false. And notably, Joseph did not raise the court's decision to admit Garlick's testimony on appeal.

Finally, Joseph argues that his counsel's failure to object to the prosecution's mischaracterization of Garlick's testimony in his closing was incompetent and prejudicial. As an initial matter, the court disagrees that the prosecution's characterization of Garlick's testimony was necessarily inaccurate. Specifically, Joseph argues that "during closing arguments, the government falsely argued that in his conversation with Mr. Garlick, Mr. Joseph had 'admitted' to having his wife lie about her income on a large loan application." Mot. at 22. But this was the substance of Garlick's testimony. Thus, even if defense counsel had objected, that objection would have been overruled. Accordingly, counsel's decision not to object was reasonable and did not prejudice Joseph.

### III. Failure to Request Certain Jury Instructions

Petitioner next argues that his counsel failed to request (1) a limiting instruction regarding Garlick's testimony and (2) a duty to disclose instruction. The court addresses each argument below.

Many courts have recognized that trial counsel is not constitutionally required to request a limiting instruction. *See, e.g.*, *Albrecht v. Horn*, 485 103, 127 (3d. Cir. 2007) ("Trial counsel is not constitutionally required to request a limiting instruction any time one could be given, because counsel might reasonably conclude that such an instruction might inadvertently call attention to the evidence of prior bad acts."); *Musladin v. Lamarque*, 555 F.3d 830, 846 (9th Cir. 2009); *United States v. Gregory*, 74 F.3d 819, 823 (7th Cir. 1996). Here, trial counsel discredited Garlick's testimony in his closing. And the prosecution effectively gave a limiting instruction by telling the jury the purpose of Garlick's testimony. Thus, a limiting instruction was unnecessary and defense counsel's decision not to offer one was reasonable.

Joseph then argues that his constitutional rights were violated when his trial counsel failed to request a duty to disclose jury instruction. Specifically, Joseph contends that a duty to disclose instruction was necessary because "[t]he gravamen of the Government's case was that Mr. Joseph committed fraud by omission." Mot. at 24. But this is false. At trial, the government presented evidence that Joseph committed fraud by actively lying and providing false information to the bank. Because the government not only relied on Joseph's omissions but also his commissions, Joseph has not demonstrated that a duty to disclose instruction would have made any difference in the jury's decision. Accordingly, he fails to show how trial counsel's failures to request these instructions were unreasonable or prejudicial to him.

**IV.     Failure to Advocate for Speedy Trial Rights**

Finally, Joseph argues that defense counsel failed to advocate for his speedy trial rights. First, he argues that trial counsel violated his constitutional rights when counsel failed to argue that the misdemeanor tax charge was not a serious offense and therefore should have been dismissed by Judge Shelby with prejudice. Joseph also argues that trial counsel violated his rights by failing to investigate and raise a Speedy Trial Act violation after reindictment.

Prior to Joseph's indictment on the current charges, Judge Shelby dismissed a prior indictment against Joseph without prejudice pursuant to a Speedy Trial Act violation. On appeal of Joseph's underlying conviction, defense counsel argued that Judge Shelby should have dismissed the prior tax charge with prejudice because it was only a misdemeanor and therefore was not serious. On appeal, the Tenth Circuit held that Joseph waived this argument by failing to raise it in the district court. Joseph now argues that his defense counsel's failure to do so constituted ineffective assistance of counsel. The court disagrees.

In a footnote in the same order, the Tenth Circuit went on to explain that even if defense counsel had raised the issue in the district court, the claim would have failed because "Joseph has failed to present a single case stating that the district court must consider the misdemeanor and felony offenses separately and regard all misdemeanor offenses as not serious." *Id. United States v. Joseph*, 705 Fed. Appx. 711, 721 n.6 (10th Cir. 2017). Thus, defense counsel's failure to present the argument regarding the seriousness of the misdemeanor offense did not prejudice Joseph because it would have failed both before the district court and on appeal.

Finally, Joseph argues that his speedy trial rights were violated when counsel failed to investigate a new Speedy Trial Act violation after reindictment. But this argument relies on the

9

false premise that the speedy trial clock commenced upon Joseph's re-indictment on February 25, 2015. In fact, the statute states

> the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, *whichever date last occurs*.

18 U.S.C. § 3161(c) (emphasis added). Here, the indictment was filed on February 25, 2015. But Joseph did not appear until April 6, 2015. Thus, the speedy trial clock began on April 6, 2015, not February 25, 2015. Accordingly, there was no violation of the speedy trial clock.

For the reasons above, Joseph has not demonstrated that trial counsel's failure to raise his speedy trial rights constituted ineffective assistance or prejudiced him.

### V.     Lack of Prejudice Given the Overwhelming Weight of Evidence

Additionally, the government argues that Joseph cannot establish prejudice for any of the alleged errors because "[t]he evidence established at trial overwhelmingly pointed to [his] guilt." Resp. at 47–48. The court agrees. Having presided over the trial, it finds that the weight of the evidence supporting Joseph's conviction is consistent with the government's argument.

### CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant [seeking relief under § 2255]." USCS Sec. 2255 Proc. R. 11(a). A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, the court denies a

certificate of appealability because Joseph's failure to establish a constitutional violation is not reasonably debatable.

## CONCLUSION

For the reasons stated above, the court **DENIES** Petitioner's Motion to Vacate Judgment and Sentence. ECF No. 1.

DATED September 30, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge